**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JACQUELINE HOLIDAY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. H-05-2554 |
| | § | |
| JO ANNE B. BARNHART, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Plaintiff Jacqueline Holiday and Defendant Jo Anne B. Barnhart's, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Holiday appeals the determination of an Administrative Law Judge ("the ALJ") that she is not entitled to receive disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416, 423. Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, it is that Holiday's Motion for Summary Judgment (Docket Entry No. 14) be granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 16) be denied, the ALJ's decision denying benefits be reversed, and the case be remanded pursuant to sentence four to the Social Security Administration ("SSA") for further proceedings.

I.   ***Background***

Holiday filed an application for disability insurance benefits with the SSA on February 8, 2001, alleging disability based upon major depressive disorder,[1] trans-cerebral ischemia,[2] congestive heart failure, and associated deficits and limitations.  (R. 169-171, 596).  After being denied benefits initially and on reconsideration (104-122), Holiday requested an administrative hearing before an ALJ to review the decision.  (R. 123).

A hearing was held on May 22, 2003, in Houston, Texas, at which time the ALJ heard testimony from Holiday, Sharon Barnes ("Barnes"), Holiday's sister, and Patricia Cowen, Ph.D., a vocational expert ("VE").  (R. 40-75).  In a decision dated July 25, 2003, the ALJ denied Holiday's application for benefits.  (R. 31-38).  On September 24, 2003, Holiday appealed the ALJ's decision to the Appeals Council for the SSA's Office of Hearings and Appeals.  (R. 26).  The Appeals Council, on November 14, 2003, vacated the hearing decision and remanded the case for further proceedings, stating that the medical evidence showed that the claimant may have a mental impairment and the ALJ's decision did not contain an adequate evaluation of the treating and examining source opinions.  (R. 136-138).

A second administrative hearing was held before the same ALJ on July 1, 2004, in Houston, Texas, at which time the ALJ heard testimony from Holiday, Barnes, and Cheryl Swisher, a VE.  (R. 76-103).  In a decision dated July 20, 2004, the ALJ denied Holiday's application for benefits.

---

[1]  "Major depressive disorder" denotes a mood disorder characterized by the occurrence of one or more major depressive episodes and the absence of any history or manic, mixed or hypomanic episodes. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 530 (29th ed. 2000).

[2]  "Ischemia" is a deficiency of blood in part, usually due to functional constriction or actual obstruction of a blood vessel. *See* DORLAND'S, *supra*, at 920.

(R. 19-25).  On August 31, 2004, Holiday appealed the ALJ's decision to the Appeals Council.

(R. 14).  The Appeals granted review and in a decision dated May 20, 2005, adopted, in part, the

ALJ's decision, but did not adopt the ALJ's reasons for finding that Holiday did not have a severe

mental impairment because she had worked as a cab dispatcher from March 2001 to April 2002.

(R. 10-12, 21).  Instead, in a decision dated May 20, 2005, the Appeals Council found that Holiday's

mental impairment was "not severe because the impairment did not last for 12-continuous months

during the period beginning September 11, 2001, the date the claimant stopped working at a level

considered to be substantial gainful activity." (R. 11).  This rendered the ALJ's decision the final

decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Holiday filed this case

on July 22, 2005, seeking judicial review of the Commissioner's denial of her claim of benefits.  *See*

Docket Entry No. 1.

**II.**     ***Analysis***

    **A.**     ***Statutory Bases for Benefits***

Social Security disability insurance benefits are authorized by Title II of the Act and are

funded by Social Security taxes.  *See* Social Security Administration, Social Security

Handbook, § 2100 (14th ed. 2001).   The disability insurance program provides income to

individuals who are forced into involuntary, premature retirement, provided they are both *insured*

and *disabled*, regardless of indigence.   A claimant for disability insurance can collect benefits for

up to twelve months of disability prior to the filing of an application.  *See* 20 C.F.R. §§ 404.131,

404.315; *Ortego v. Weinberger*, 516 F.2d 1005, 1007 n.1 (5th Cir. 1975); *see also Perkins v. Chater*,

107 F.3d 1290, 1295 (7th Cir. 1997). For purposes of Title II disability benefits, Holiday was insured

for benefits through the date of the ALJ's decision.  (R. 19).  Consequently, to be eligible for disability benefits, Holiday must prove that she was disabled prior to that date.

Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Act.  See 42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a).  Under Title II, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

**B.**     **_Standard of Review_**

**1.**     **_Summary Judgment_**

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact.  The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case.  *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).  When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party and deny the motion if there is some evidence to support the nonmoving party's position.  *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000).  If there are no issues of material fact, the court shall review any questions of law *de novo*.  *See Merritt-*

4

*Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2.      *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence.  *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for

that of the Commissioner.  *See Masterson*, 309 F.3d at 272.  In short, "[c]onflicts in the evidence are

for the Commissioner and not the courts to resolve.  *Id*.

     **C.**    ***ALJ's Determination***

     An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is

capable of performing "substantial gainful activity," or is, in fact, disabled:

    1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.  *See* 20 C.F.R. § 404.1520(b).

    2.    An individual who does not have a "severe impairment" will not be found to be disabled.  *See* 20 C.F.R. § 404.1520(c).

    3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.  *See* 20 C.F.R. § 404.1520(d).

    4.    If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.  *See* 20 C.F.R. § 404.1520(e).

    5.    If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed.  *See* 20 C.F.R. § 404.1520(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05.  The claimant

has the burden to prove disability under the first four steps.  *See Myers*, 238 F.3d at 619.  If the

claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show

that other substantial gainful employment is available in the national economy, which the claimant

is capable of performing.  *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  If the Commissioner is able to verify that other

work exists in significant numbers in the national economy that the claimant can perform in spite

6

of her existing impairments, the burden shifts back to the claimant to prove that she cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id.*

The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). An individual claiming disability benefits under the Act has the burden to prove that she suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). A claimant is deemed disabled under the Act only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. § 404.1572(a)-(b).

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3). "[A]n individual is 'under a disability, only if [her] impairments are of such severity that [she] is not only unable to do [her] previous work but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if she applied. *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant met the disability insured status requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The medical evidence establishes that claimant has mild congestive heart failure and hypertension, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony was not fully credible regarding her limitation or consistent with the record considered as a whole.

5. The claimant has the following residual functional capacity to perform at the sedentary exertional level. The claimant can stand or walk up to a total of 2 hours in an 8-hour workday. The claimant can sit up to a total of 6 hours in an 8-hour workday. The claimant can lift and carry 5 to 10 pounds occasionally.

6. The claimant is not precluded from performing her past relevant work as a cab dispatcher and accounts payable clerk.

7. The claimant's past relevant work as cab dispatcher and accounts payable clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565).

8.      The claimant's medically determinable mild congestive heart failure, and hypertension do not prevent the claimant from performing her past relevant work.

9.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(f)).

(R. 24-25).  Because the ALJ found that Holiday could perform his past relevant work, the ALJ did not proceed to step five of the sequential evaluation process.

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  To determine whether the decision to deny Holiday's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the claimant's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the claimant's age, educational background, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).  Any conflicts in the evidence are to be resolved by the ALJ and not the court.  *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

### D.      *Issues Presented*

Holiday contends that substantial evidence does not support the findings of the ALJ.  Holiday argues that the ALJ erred at steps two and three of the sequential evaluation, asserting that her mental impairments are severe and that she meets listing criteria of 12.04 (affective mood disorders).

Additionally, Holiday maintains that the ALJ erred at step four of the evaluation, claiming she does not retain the residual functional capacity to perform sedentary work. *See* Docket Entry No. 14. The Commissioner contends that the ALJ's findings are supported by substantial evidence. *See* Docket Entry No. 16.

      E.      ***Review of ALJ's Decision***

          1.      ***Objective Medical Evidence and Opinions of Physicians***

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). If the claimant is not actually working and her impairments match or are equivalent to one of the listed impairments, she is presumed to be disabled and qualifies for benefits without further inquiry. *See id.* at 532. When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The relevant regulations similarly provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Loza*, 219 F.3d at 393.  The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment.  *See Zebley*, 493 U.S. at 531.

The claimant has the burden to prove at step three that her impairment or combination of impairments matches or is equivalent to a listed impairment.  *See id.* at 530-31; *Selders*, 914 F.2d at 619.  The listings describe a variety of physical and mental illnesses and abnormalities, and are typically categorized by the body system they affect.  *See Zebley*, 493 U.S. at 529-30.  Individual impairments are defined in terms of several specific medical signs, symptoms, or laboratory test results.  *See id.* at 530.  For a claimant to demonstrate that her disorder matches an Appendix 1 listing, it must meet *all* of the specified medical criteria.  *See id.*  An impairment, no matter how severe, does not qualify if that impairment manifests only some of the specified criteria.  *See id.*

For a claimant to qualify for benefits by showing that her unlisted impairment, or combination of impairments, is equivalent to a listed impairment, she must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.  *See id.* at 531.  A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 404.1526(a).  The applicable regulations further provide:

> (1)(i)   If you have an impairment that is described in the Listing of Impairments in Appendix 1 of Subpart P of this chapter, but—
>
>     (A)     You do not exhibit one or more of the medical findings specified in the particular listing, or
>
>     (B)     You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;

(ii)   We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.

20 C.F.R. § 404.1526(a).   Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Ultimately, the question of equivalence is an issue reserved for the Commissioner. *See Selders*, 914 F.2d at 619; *see also* 20 C.F.R. § 404.1527(e).

A review of the medical records indicates that in February 2000, Holiday was admitted to Memorial Hermann Hospital because she suffered an incident resulting in stroke-like symptoms. (R. 84-85, 380-381).  She was diagnosed with hypertension, hypertension heart disease, congestive heart failure (resolved), severe left ventricular systolic dysfunction with an ejection fraction of 20-25%, a previous transient ischemic attack, and trans-cerebral ischemia.  (R. 381-401).  On June 19, 2000, Holiday was treated at the emergency room of the Harris County Hospital District for continued substernal chest pain and pressure radiating into her left arm.  (R. 193-200).  Based on chest imaging, Nan Garrett, M.D. ("Dr. Garrett") diagnosed chronic obstructive pulmonary disease ("COPD")[3] changed by hyperinflation of the lungs and flattening of the diaphragm, chronic bronchitis, and degenerative changes to Holiday's thoracic spine with presence of osteophytes.[4]  (R. 200).

---

[3] "COPD" is any disorder characterized by persistent or recurring obstruction of bronchial air flow, such as chronic bronchitis, asthma, or pulmonary emphysema. *See* Dorland's, *supra*, at 513.

[4] "Osteophyte" refers to a bony excrescence or osseous outgrowth. *See* Dorland's, *supra*, at 1290.

In March 2001, Holiday was treated at the Mental Health and Mental Retardation Authority ("MHMRA") of Harris County by Chantee Vavasseur, M.D. ("Dr. Vavasseur"). (R. 263). She was reported to have "vegetative symptoms of depression." (R. 263). Furthermore, Dr. Vavasseur described Holiday as suffering from a one-year history of depression, crying spells, insomnia, reduced energy, reduced concentration, anhedonia,[5] social isolation, and lacking interest in activity. (R. 277). She was prescribed to take a sedative and an antidepressant (*i.e.*, Remeron and Zoloft). (R. 278).

In May 2001, Holiday had a psychiatric consultative examination with Kathy Scott-Gurnell, M.D. ("Dr. Scott-Gurnell"). Dr. Scott-Gurnell diagnosed Holiday as having "double depression" with a long history of dysthymia and major depressive disorder. (R. 207). Dr. Scott-Gurnell noted that Holiday's prognosis was fair and she was a very determined person in spite of her lack of motivation. (R. 207). It was reported that though she had gradually improved, it had been one and a half years and she still had not reached her baseline. (R. 207). Dr. Scott-Gurnell further noted that Holiday cried a lot and had feelings of hopelessness. (R. 207). Dr. Scott-Gurnell rated Holiday's global assessment of functioning ("GAF")[6] as 45. (R. 207).

In May 2001, Holiday had a consultative examination with Donald Gibson, M.D. ("Dr. Gibson"). (R. 209). Dr. Gibson found that Holiday had "Class 2 heart failure" and shortness of

---

[5] "Anhedonia" means a total loss of feeling of pleasure in acts that normally give pleasure. *See* DORLAND'S, *supra*, at 89.

[6] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV-TR") 34 (4th ed. 2000). The reporting of overall functioning is done by using the GAF scale, which is divided into ten ranges of functioning. The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. A GAF rating of 45 indicates a "serious" impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *See id.*

breath during exertional activities.  (R. 211).  He observed, however, that the condition had stabilized and there did not appear to be any severe decompensation or pulmonary edema, and no evidence of coronary disease or typical chest pressure.  (R. 211).  Referencing  Holiday's depression, Dr. Gibson noted that she had significant depression and a history of suicidal thoughts last year, but had stabilized on medication.  (R. 211).

In June 2001, Holiday returned to MHMRA and was diagnosed by Dr. Vavasseur as having major depression and psychosis.  (R. 264).  He noted, however, that she had a decrease in feelings of sadness, she did not feel hopeless or suicidal, and she had been able to concentrate better.  (R. 264).  He also noted that she was responding to her medicine very well.  (R. 264).

In August 2001, Holiday's major depression appeared to have stabilized.   (R. 344).  Physicians rated Holiday's social competence as "fairly positive," but she was rated to have "very infrequent" social interest.  (R. 345).  Her social effectiveness was marked as "effective," her social network was "limited" and her meaningful activity was rated as "almost never involved."  (R. 345).

In October 2001, Holiday reported feelings of hopelessness to Dr. Vavasseur.  (R. 343).  She was diagnosed with major depression and Dr. Vavasseur noted increased stressors that could result in potential decompensation.  (R. 343).  In December 2001, Holiday was involved in an automobile accident and her car was totaled.  (R. 67-68).

In March 2002, Pankajam Sriram, M.D. ("Dr. Sriram"), diagnosed Holiday with major depression and included a history of schizophrenia.  (R. 341).  He also noted that she appeared tearful and her speech was slow. (R. 341).

In April 2002, Holiday was examined by William Livesay, M.D. ("Dr. Livesay").  (R. 331). Dr. Livesay noted his impression of Holiday's x-rays that she had hypertensive cardiovascular

14

disease with mild congestive heart failure.  (R. 330).  Furthermore, it was noted that she had back and leg pain of musculoskeletal origin.  (R. 330).  In reference to her work-related functions, Dr. Livesay noted that Holiday can sit for long periods without difficulty, but is unable to do much standing or sitting for long periods of times due to leg and back pain, and shortness or breath.  (R. 331).

In May 2002, Holiday was examined by Dr. Sriram at MHMRA.  (R. 338).  It was noted that Holiday had been off medication for three weeks and though she slept okay, she woke up several times in the night.  (R. 338).  It was further noted that she suffered anxiety, was often sad, tired and lacked motivation.  (R. 338).  Holiday was diagnosed with recurrent episodes of major depressive disorder.  (R. 339).

In September 2002, Holiday returned to MHMRA and was examined by Dr. Sriram.  (R. 360).  He noted that Holiday was doing well since her last visit, that she had a decrease in mood swings and that she slept well.  (R.360).  Dr. Sriram further noted, however, that she had a decrease in energy and might suffer from bipolar disorder.  (R.360).

In May 2003, Holiday returned to MHMRA and physicians continued prescribing Zoloft.  (R. 364-365).  Upon examination, Holiday was reported as tearful, but cooperative.  (R. 364-365).

In March 2004, Dr. Vavasseur examined Holiday for a follow-up visit.  (R. 567).  He diagnosed her with major depressive disorder single episode, severe, without psychotic features.  (R. 567).  Dr. Vavasseur rated Holiday's symptoms at 6, on a 0 to 10 scale of symptom severity and 5 for her functional status.  (R. 567).

In June 2004, Holiday returned to Dr. Vavasseur who diagnosed her with major depressive disorder single episode without psychotic features.  (R. 563).  He diagnosed Holiday with

nonpsychotic algorithm at stage 7 for 13 weeks.  (R. 563).  Dr. Vavasseur also noted that Holiday

had had two week periods of feeling depressed and an increase in hopelessness.  (R. 563).  Dr.

Vavasseur prescribed Holiday with the anti-depressant Zoloft and sedative Remeron.  (R. 564).

In July 2004, Holiday was seen for follow-up by Dr. Vavasseur.  (R. 561).  She was

diagnosed with  a  major depressive disorder single episode severe without psychotic features and

her symptom of severity was rated at 7.  (R. 561).  During the exam, Holiday reported to Dr.

Vavasseur that she had been waking up frequently at night and had no change in weight or appetite.

(R. 561).  Dr. Vavasseur added BuSpar to her current treatment plan that included both Zoloft and

Remeron.  (R. 561).

In February 2005, Holiday returned to MHMRA for another follow-up by Dr. Vavasseur.

(R. 544).  She was diagnosed with major depression recurrent without psychosis.  (R. 544).  Dr.

Vavasseur reported that Holiday had an angioplasty and assessed her GAF as 55.[7] (R. 544).  He

further noted that she continued her psychiatric medication while in the hospital, she reported to have

no return feelings of depression, hopelessness and helplessness.  (R. 547).  Holiday also reported to

be sleeping better, had not been suicidal and had not had any recent crying spells.  (R. 547).  Dr.

Vavasseur's treatment plan required that Holiday continue with the medications Zoloft, Remeron

and BuSpar.

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is

familiar with the claimant's injuries, treatments, and responses should be accorded considerable

weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621;

---

[7] A GAF rating of 55 indicates a "moderate" impairment in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or coworkers).  *See* DSM-IV-TR, *supra*, at 34.

16

*Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The opinion of a

specialist generally is accorded greater weight *than* that of a non-specialist.  *See Newton*, 209 F.3d

at 455; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims*

*v. Apfel*, 530 U.S. 103, 108 (2000).  Medical opinions are given deference, however, only if those

opinions are shown to be more than conclusory and supported by clinical and laboratory findings.

*See Scott*, 770 F.2d at 485.  Moreover, a treating physician's opinions are far from conclusive

and may be assigned little or no weight when good cause is shown.  *See Myers*, 238 F.3d at 621;

*Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237.  Good cause may permit an ALJ to discount

the weight of a treating physician's opinion in favor of other experts when the treating

physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or

diagnostic techniques, or is otherwise unsupported by the evidence.  *See Myers*, 238 F.3d at 621;

*Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29

F.3d at 211.  It is well settled that even though the opinion and diagnosis of a treating physician

should be afforded considerable weight in determining disability, the ALJ has sole responsibility

for determining a claimant's disability status.  *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d

at 621; *Newton*, 209 F.3d at 455.

        a.        ***Major Depressive Disorder***

       Holiday argues that the Appeals Council erred by finding that her mental impairments did

not last for a period of twelve continuous months from the date she ceased working at the substantial

gainful activity level, namely September 11, 2001. (R. 10-13).  The duration requirement is satisfied

when either: (1) the disability "can be expected to result in death;" or (2) the disability "has lasted

. . . for a continuous period of not less than 12 months;" or (3) the disability "can be expected to last for a continuous period of not less than 12 months." *See* 20 C.F.R. §§ 404.1505(a), 404.1509.

The Appeals Council's decision that Holiday failed to meet the continuity requirement is not supported by substantial evidence. Holiday's mental impairments and the severity of their effects are well-documented as having commenced as early as 2000. (R. 381, 401). Indeed, in February 2000, physicians diagnosed Holiday with stroke-like symptoms with confusion and blurred speech. (R. 84-85, 380-381). In March 2001, Holiday was reported as having vegetative symptoms of depression, crying spells, insomnia, social isolation, and related difficulties. (R. 263). In May 2001, Holiday was noted as having poor concentration, anhedonia, isolation, and periodic suicidal ideation. (R. 277). In June 2001, Holiday was diagnosed with major depression and psychosis. (R. 263-264). Although Holiday continued taking multiple medications including antidepressants and sedatives, in March 2002, Holiday was diagnosed again with major depression and schizophrenia. (R. 341). In May 2002, physicians diagnosed Holiday with major depression, manifesting in several outward symptoms. (R. 338). In March 2004, Holiday again demonstrated major depression and had a GAF rating of 45. When analyzing the continuity requirement as it applies to mental impairments, the Fifth Circuit has stated:

> . . . [w]hile the mere existence of symptom-free period may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim. Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

*See Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986).  As in *Singletary*, Holiday as demonstrated evidence of "years of visits to hospitals and numerous diagnoses of mental problems" while also demonstrating short symptom-free intervals.  *See id.* at 822.  Here, as in *Singletary*, there can be no doubt that Holiday met the duration requirement.  As set forth, *supra*,  the record evidence demonstrates that Holiday was diagnosed over the course of four years with major depression, schizophrenia, vegetative symptoms, social isolation, and further difficulties.

### b. *Listing 12.04 (Affective Mood Disorders)*

Holiday next argues that the ALJ should have found that her impairment met or equaled Listing 12.04 (Affective Mood Disorders).

To meet Listing 12.04, a claimant must have a clinically diagnosed mood disorder "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. pt. 404, subpt. P, App. 1 § 12.04.  Additionally, "the required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  *Id.*  Subsection A provides a list of eight symptoms that, when at least four are experienced either continuously or intermittently, provides a finding of severe depression.  *See id.*

In this case, the record demonstrates that Holiday experienced anhedonia in March and May 2001.  (R. 277-278).  Holiday also testified at the administrative hearings that she does nothing all day; she experiences sleep disturbances, which are noted in the records as insomnia and "waking up" in the middle of the night; and she has taken a sedative (Remeron) for years.  (R. 263).  Holiday also has shown decreased energy in reports in March 2001 and September 2002.  (R. 277-278).  Records

further indicate Holiday had difficulty concentrating or thinking, and relative testified in this regard. (R. 86, 90, 91, 92, 96, 97).

With regard to Subsection B, this subsection provides manifestations of symptoms that result in a finding that a claimant's severe depression severely limits a claimant's ability to function. 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.04. A claimant's symptoms must cause two of these manifestations. Here, Holiday's records indicate difficulties in maintaining social functioning. She does not leave her home unless her family begs her to go. (R. 93). If she does leave at her family's request, she will not go into public, but only her sisters' houses. *Id*. Holiday lives alone and does not go out. *Id*. The records also indicate Holiday has difficulties in maintaining concentration, persistence, or pace. In 2004, Holiday checked into a hospital without notifying her family and, several days into her admittance, she though her family knew she was there. (R. 89).

Because the ALJ's decision is not supported by substantial evidence, this case must be remanded for further development regarding Holiday's alleged mental impairment. It may be of benefit to the ALJ to have a medical expert present at any new administrative hearing to properly review and evaluate the medical evidence.

### 2. *Subjective Complaints*

The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints. *See Falco*, 27 F.3d at 163 (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, she must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley*, 67 F.3d at 556 (citing 20 C.F.R. § 404.1529). Once a medical impairment is established, the subjective

complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.*

It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala*, 30 F.3d 33, 35 n.2 (5th Cir. 1994); *Falco*, 27 F.3d at 164; *Wren*, 925 F.2d at 128. The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand. *See Falco*, 27 F.3d at 164 n.18. Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; *Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985)); *accord Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)); *Hampton v. Bowen*, 785 F.2d 1308, 1309 (5th Cir. 1986).

As a matter of law, the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *See Hames*, 707 F.2d at 166; *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *accord Brown v. Bowen*, 794 F.2d 703, 707 (D.C. Cir. 1986). Additionally, the mere existence of pain does not automatically bring a finding of disability. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989); *Owens*, 770 F.2d at 1281. It must be determined whether substantial evidence indicates an applicant can work despite being in pain or discomfort. *See Chambliss*, 269 F.3d at 522; *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

For pain to rise to the level of disabling, that pain must be " constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*, 925 F.2d at 128.   The decision arising from the ALJ' s discretion to determine whether pain is disabling is entitled to considerable deference. *See Chambliss*, 269 F.3d at 522; *Wren*, 925 F.2d at 128; *James*, 793 F.2d at 706.   However, an ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)).

The ALJ' s decision indicates that the ALJ did consider objective and subjective indicators related to the severity of Holiday' s complaints:

> Based on a review of all the evidence, including the claimant's testimony, her statements as to the severity of her impairments and the impact on her ability to work, the undersigned Administrative Law Judge finds the claimant's testimony and subjective complaints are generally credible, but that she can make a vocational adjustment to perform her past relevant work.

(R. 23).   The parties do not dispute the ALJ's findings regarding Holiday's subjective complaints.

### 3.   *Residual Functional Capacity*

Under the Act, a person is considered disabled:

> only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).   If a claimant demonstrates that she cannot perform her past relevant work, the Commissioner bears the burden of proving that her functional capacity, age, education, and work experience allow her to perform work in the national economy. *See Brown v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 216; *Myers*, 238 F.3d at 619; *Greenspan*, 38 F.3d at 236.  Once the Commissioner fulfills this burden by pointing out potential alternative employment, the claimant, in order to prevail, must prove that she cannot perform the alternate work suggested.  *See Masterson*, 309 F.3d at 272; *Boyd*, 239 F.3d at 705; *Shave*, 238 F.3d at 594; *Carey*, 230 F.3d at 135.

To determine whether an applicant can return to a former job or, if never employed, can perform substantial work in the national economy, the regulations require the ALJ to evaluate the applicant's RFC.  *See Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983) (citing 20 C.F.R. §§ 404.1561, 416.961).  This term of art merely designates the ability to work despite physical or mental impairments.  *See id.*; *see also* 20 C.F.R. §§ 404.1545, 416.945.  "Residual functional capacity" combines a medical assessment with the descriptions by physicians, the applicant or others of any limitations on the applicant's ability to work.  *See id.*  When a claimant's RFC is not sufficient to permit her to continue her former work, then her age, education, and work experience must be considered in evaluating whether she is capable of performing any other work.  *See* 20 C.F.R. §§ 404.1561, 416.961.  The testimony of a vocational expert is valuable in this regard, as "he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Carey*, 230 F.3d at 145; *see also Masterson*, 309 F.3d at 273; *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  In the absence of contrary evidence, the ALJ may properly rely on the testimony of a vocational expert in reaching a conclusion regarding a claimant's RFC to perform work available in the national economy.  *See Masterson*, 309 F.3d at 273.

Moreover, under certain circumstances, the ALJ's application of the medical-vocational guidelines set forth in Appendix 2 of Subpart P of the regulations, also referred to as the grids, without testimony from a vocational expert, is sufficient to assess whether a claimant is able to work or is disabled under the Act. *See Heckler v. Campbell*, 461 U.S. 458, 467, 470 (1983). As the Supreme Court explained in *Campbell*:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

461 U.S. at 461-62 (footnotes omitted). The Court elaborated:

> Each of these four factors is divided into defined categories. A person's ability to perform physical tasks, for example, is categorized according to the physical exertion requirements necessary to perform varying classes of jobs—*i.e.*, whether a claimant can perform sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 404.1567. Each of these work categories is defined in terms of the physical demands it places on a worker, such as the weight of objects [she] must lift and whether extensive movement or use of arm and leg controls is required. *Ibid.*

*Id.* at 462 n.3.

Under the regulations, impairments can be either exertional or nonexertional. *See Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs. *Id.* The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands

for sitting, standing, walking, lifting, carrying, pushing, and pulling. *See id.*; *see also* 20 C.F.R. § 404.1569(a). All other impairments are classified as nonexertional. *See Sykes*, 228 F.3d at 263.

In evaluating RFC, the Fifth Circuit has looked to SSA rulings ("SSR"). The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *See Myers*, 238 F.3d at 620 (citing *B.B. ex rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)). In *Myers*, the Fifth Circuit relied on SSRs addressing residual functional capacity and the interplay of exertional and nonexertional factors:

> First, SSR 96-8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . ." RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. "Each function must be considered separately." "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Id.* (quoting 61 Fed. Reg. 34474-01 (July 2, 1996)). The court also noted that SSR 96-9p defines exertional capacity as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated. *See id.* Thus, to determine that an applicant can do a given type of work, the ALJ must find that the applicant can meet the job's exertional and nonexertional requirements on a sustained basis and can maintain regular employment. *See Watson*, 288 F.3d at 218; *Singletary*, 798 F.2d at 821; *Carter*, 712 F.2d at 142 (citing *Dubose v. Mathews*, 545 F.2d 975, 977-78 (5th Cir. 1977)).

When a claimant suffers only exertional impairments and an ALJ's findings of residual functional capacity, age, education, and previous work experience coincide with the grids, the Commissioner may rely exclusively on the medical-vocational guidelines to determine whether work exists in the national economy which the claimant can perform. *See Newton*, 209 F.3d at 458 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569(b)). Nevertheless, "use of the grid rules is only appropriate 'when it is established that the claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect [her] residual functional capacity.'" *Watson*, 288 F.3d at 216 (quoting *Crowley*, 197 F.3d at 199); *accord Loza*, 219 F.3d at 398; *Newton*, 209 F.3d at 458. If the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that suitable jobs exist in the economy. *See id.* Therefore, before applying the grids, it must be determined whether nonexertional factors, such as mental illness, significantly affect a claimant's RFC. *See Loza*, 219 F.3d at 399; *Newton*, 209 F.3d at 459.

Here, as set forth above, Holiday's mental impairments were not fully evaluated. In the ALJ's hypothetical question to the VE, no mental impairment was included. (R. 98). Consequently, the VE responded to the ALJ that such an individual with no mental impairment could perform the duties of accounts payable clerk or of a taxicab dispatcher. *Id*. It is questionable whether Holiday has the cognitive skills and/or ability to interact with others, which would be necessary to perform her past relevant work as a taxi-cab dispatcher or accounts payable clerk. Because the Commissioner's decision does not evaluate Holiday's mental residual functional capacity, the

Commissioner's decision that Holiday can perform her past relevant is not supported by substantial evidence.

**III.**     _**Conclusion**_

In sum, the record lacks substantial evidence supporting the Commissioner's decision  that Holiday is not disabled.  Accordingly, it is therefore

**ORDERED** Plaintiff's Motion for Summary Judgment (Docket Entry No. 14) be **GRANTED**.  It is further

**ORDERED** that the Defendant's Motion for Summary Judgment (Docket Entry No. 16) be **DENIED**.  It is finally

**ORDERED** that the case be **REVERSED** and **REMANDED**, pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for a new hearing to reevaluate the severity of Holiday's mental limitations, her mental residual functional capacity, obtain testimony from a medical expert, obtain vocational testimony, and determine Holiday's ability to perform the demands of any identified jobs.

SIGNED at Houston, Texas, on this the 29th day of September, 2006.

Calvin Botley
United States Magistrate Judge

27